UNITED STATES of America, Appellee,

v.

Bobby G. SPLAIN, Appellant.

No. 76–1323.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Dec. 7, 1976.

Rehearing Denied Dec. 28, 1976.

Donald E. Bonacker, Springfield, Mo. for appellant.

David H. Jones, Asst. U. S. Atty., Springfield, Mo., for appellee; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on the brief.

Before GIBSON, Chief Judge, MARKEY*, and STEPHENSON, Circuit Judge.

GIBSON, Chief Judge.

Defendant, Bobby Splain, appeals from his conviction of uttering a forged United States Treasury check in violation of 18 U.S.C. § 495 (1970). Splain was sentenced to a two-year prison term under the provisions of 18 U.S.C. § 4208(a)(2) (1970).

On January 4, 1975, Splain and Billy Cantrell visited the home of William T. Box in Seymour, Missouri. After conversing for a period of time, Splain and Cantrell departed from the Box residence. Shortly thereafter, Box discovered that his social security check from the United States Treasury in the amount of $146.00 was missing. Later that day, Slain and Cantrell arrived at the home of Carl Hartley for the purpose of delivering a quantity of firewood. Hartley, who was well acquainted with Splain, did not know Cantrell. Splain misrepresented Cantrell's identity by introducing him

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

to Hartley as "William Box". Splain then requested Hartley to cash a $146.00 social security check made payable to and endorsed with the signature "William Box". Hartley then cashed the check, retained some of the proceeds to satisfy a debt obligation owed to him by Splain and tendered the balance to Cantrell.

Based upon their participation in this forgery scheme, Splain and Cantrell were subsequently indicted. In Count I of the indictment, Cantrell was charged with forging the name "William T. Box" on the back of the social security check. In Count II, both Cantrell and Splain were charged with uttering the forged check. Cantrell plead guilty to the charge of forging the social security check, received a two-year suspended sentence and was placed on probation for two years. Cantrell testified as a Government witness at Splain's trial and admitted stealing the check from the Box residence. It was Splain's suggestion, according to Cantrell, that the check should be taken to Hartley to be cashed. Upon receiving the proceeds of the forged check, Cantrell retained $20.00 and gave the balance to Splain.

Splain's initial contention on appeal is that the District Court erred in refusing to grant a mistrial when Hartley, as a Government witness, volunteered allegedly prejudicial information on the stand. In response to an inquiry by the prosecutor relating to whether Hartley had maintained previous business dealings with Splain, Hartley stated:

> Well, just that I have had several checks come back in the house that I would have to go out to his house.

Splain's counsel immediately moved for a mistrial but the motion was denied by the District Court. Counsel also rejected an offer by the District Court to instruct the jury to disregard the comment. Splain now contends that the refusal to declare a mistrial was reversible error on the basis that he was prejudiced by Hartley's statement which implied Splain had possibly been involved in previous crimes. Splain concedes that the prosecutor did not pose the ques-

tion to Hartley for the purpose of eliciting this information, nor is there any contention that the Government exercised any bad faith in this regard. Regardless, Splain contends that Hartley's unilateral and volunteered injection of such allegedly prejudicial information into the trial mandates reversal of the conviction.

The general rule is that the Government is precluded from introducing evidence of defendant's other crimes or criminal conduct except in certain circumscribed and well-delineated situations. *United States v. Calvert*, 523 F.2d 895, 906–07 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); Fed. R.Ev. 404(b). However, this rule is inapposite to the present case for several reasons. First the Government played no active role and exercised no bad faith in eliciting this information from Hartley. *See United States v. Scott*, 511 F.2d 15, 20 (8th Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). The Government did not attempt to introduce or exploit this evidence for the purpose of reflecting upon Splain's guilt. Second, the passing reference made by Hartley was not patently inculpatory, but was rather innocuous, and could not have had the likely effect of implanting prejudice in the jurors' minds. Third, any improbable taint which could have flowed from this evidence could have been cured by the refused cautionary instruction that the District Court offered to give. *United States v. Scott, supra*, at 20; *United States v. Plante*, 472 F.2d 829, 831 (1st Cir.), *cert. denied*, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411 (1973). Counsel for Splain rejected the instruction and Splain can not now complain that the evidence may have prejudiced the jury. A cautionary instruction here would have erased any possible prejudice. The trial judge can not be faulted for any trial mishaps that he offers to and could correct. Moreover, the evidence of guilt in this case was overwhelming; therefore, there is little likelihood that the jury was affected by the passing comment. *United States v. Boerner*, 508 F.2d 1064, 1068 (5th Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44

L.Ed.2d 681 (1975). For the above reasons, Hartley's oblique reference to Splain's "bad" checks did not constitute reversible error.

■ We now turn to the more disconcerting issues of this appeal. Splain contends that the conduct of the prosecutor during closing argument in this case was so outrageous and prejudicial that a new trial is required. The first objectionable portion of the argument occurred when the prosecutor stated:

> [L]adies and gentlemen, I submit that Bobby Splain was a pretty slick man, he gave slick testimony up there.

We have no trouble in concluding that this particular comment was not prejudicial and does not require reversal of the conviction. This prosecutorial argument was in response to defense counsel's attempt to portray Splain as an uneducated individual who maintained a socially unacceptable lifestyle. While the adjectival characterization of Splain and his testimony as "slick" may have been unfortunate, it was within the permissible degree of latitude afforded the prosecutor in responding to the argument of defense counsel. *United States v. Nowak*, 448 F.2d 134, 141 (7th Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 714, 30 L.Ed.2d 731 (1972). Furthermore, the reference was not so inflammatory or denigrating as to create any likelihood of prejudice. The word "slick", while clearly not a word of endearment, is susceptible to various connotations, many of which are not inherently sinister or suggestive of criminal culpability. *See Hall v. United States*, 419 F.2d 582, 587 (5th Cir. 1969).[1] Stronger and more denigrating descriptive references to defendants by prosecutors have not constituted reversible error in cases, such as this one, where there was substantial evidence of guilt. *E. g., United States v. Cook*, 432 F.2d 1093, 1106–07 (7th Cir. 1970), *cert. denied*, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971) (reference to defendant

as a "true monster" and "subhuman man" with a "rancid, rotten mind"); *United States v. Hoffman*, 415 F.2d 14, 21 (7th Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969) (reference to defendant as a "liar, crook, wheeler and dealer, and similar terms"). While we urge prosecutors to avoid the use of such potentially epithetic statements at trial, no reversible error existed in the present case.

One other aspect of the prosecutor's closing argument is assigned by Splain as reversible error. In that portion, the prosecutor stated:

> The U. S. Attorney's Office also wants to see justice done in a case and the U. S. Attorney's Office doesn't file a case unless they really feel that there is—a man has committed a crime and we are not out intentionally picking on Bobby Splain because he is different than we are or different than you are as jury members. We are trying to convict Bobby Splain because he committed a crime and we are convinced of that or we wouldn't be trying him.

■ Statements such as this have no place in a criminal trial. It is a fundamental principle in our jurisprudence that a man is presumed innocent until proven guilty by a jury of his peers. The question of guilt or innocence rests with the jury and the prosecutor has no authority to sit as a "thirteenth juror" and cast a ballot on this issue. The prosecutor, as a representative of the Government in a criminal trial, must never lose sight of his duty to secure justice, to seek acquittal of the innocent and conviction of the guilty. While he may prosecute vigorously, he must do so fairly. In assuming a partisan position and expressing his personal opinion of defendant's guilt or innocence, the prosecutor is transgressing his inviolate responsibility of objectively, yet forcefully, presenting the Government's case at trial and leaving the ultimate question of innocence or guilt to

---

1. In *Hall*, a conviction was reversed because the prosecutor, in addition to making other prejudicial remarks, referred to the defendant as a "hoodlum" in closing argument. The word "hoodlum" implies that one has engaged in previous illicit conduct. "Slick" carries no such suggestion.

the jury. A personal expression of defendant's culpability, which inserts an extraneous and irrelevant issue before the jury, is particularly objectionable and highly improper when made by the prosecutor, whose position of public trust and experience in criminal trials may induce the jury to accord some unwarranted weight to the comment. Because of the recognizable influence that such statements of personal opinion may have upon the jury, a prosecutor engages in unprofessional conduct and may subject himself to sanctions by bar associations if he chooses to engage in such conduct. *ABA Standards Relating to the Prosecution Function and the Defense Function* § 5.8(b) (Approved Draft, 1971); *see Code of Professional Responsibility* DR 7–106(C)(4), EC 7–24.

Despite the objectionable nature of prosecutorial comments on defendant's guilt, courts have not yet adopted a *per se* rule mandating reversal of a conviction in all cases where such a comment is made.[2] *See generally* Annot., 50 A.L.R.2d 766 (1956); 5 *Wharton's Criminal Law and Procedure* § 2084 (1957). *Contra, Greenberg v. United States*, 280 F.2d 472, 475 (1st Cir. 1960). The facts of each case must be reviewed independently to ascertain whether the comment was "unduly prejudicial", *United States v. Greene*, 497 F.2d 1068, 1085 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975), or was "plainly unwarranted and clearly injurious". *Mellor v. United States*, 160 F.2d 757, 765 (8th Cir.), *cert. denied*, 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858 (1947). Reversal is in order only if the court determines that the jury verdict could reasonable

have been affected by the argument. *United States v. Tortora*, 464 F.2d 1202, 1207 (2d Cir.), *cert. denied sub nom. Santoro v. United States*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *Devine v. United States*, 403 F.2d 93, 96 (10th Cir. 1968), *cert. denied*, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969).

One important factor to consider in determining whether a closing argument is so prejudicial to require reversal of the conviction is the amount of evidence indicating defendant's guilt. If the evidence of guilt is overwhelming, an improper argument is less likely to affect the jury verdict. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Hamilton*, 455 F.2d 1268, 1270 (3d Cir. 1972). On the contrary, if the evidence of guilt is weak or tenuous, the existence of prejudice is more easily assumed. *Berger v. United States*, 295 U.S. 78, 88–89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We have, in the present case, substantial and persuasive evidence which is highly implicative of Splain's knowledge of and participation in the criminal forgery scheme. Splain's co-defendant, Cantrell, testified that Splain suggested that the stolen check could be cashed by Carl Hartley. Splain misrepresented the identity of Cantrell to assure that Hartley would cash the check payable to "William Box". In light of this evidence, Splain's defense that he was oblivious to the fact that the check presented to Hartley was stolen and forged by Cantrell is severely attenuated. The overwhelming evidence of guilt in this case convinces us that the prosecutor's comment could not have preju-

---

**2.** There is a line of cases holding it not to be reversible error for the prosecutor to state his personal belief in the guilt of the accused if the opinion is based on the evidence adduced at trial and if the jury is not led to believe that the opinion is based on evidence not included in the record. *Schmidt v. United States*, 237 F.2d 542, 543 (8th Cir. 1956). The opinion of the prosecutor in the present case is not protected by this rule. The prosecutor here did not recite the inculpatory evidence against Splain and advise the jury that a guilty verdict was required in light of that evidence. Rather, the

prosecutor stated that the jury could infer guilt merely on the basis that Splain had been indicted. Such a statement may refer to matters outside the record and not before the jury. Therefore, a statement of personal opinion based upon the inculpatory evidence in the case and a statement such as the one in the present case are generically different and must be governed by different rules. *Compare United States v. Grunberger*, 431 F.2d 1062, 1068 (2d Cir. 1970), *with United States v. Hysohion*, 439 F.2d 274, 277–78 (2d Cir. 1971).

diced Splain or affected the jury verdict. *United States v. Chrisco*, 493 F.2d 232, 237–38 (8th Cir.), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974).[3]

 Furthermore, Splain's counsel did not proffer an objection to this particular comment. Therefore, this court will review the alleged error only if it is shown that the argument was so prejudicial as to have "affected substantial rights resulting in a miscarriage of justice." *United States v. Big Crow*, 523 F.2d 955, 960–61 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); Fed.R.Cr.P. 52(b). As indicated above, the overwhelming evidence of guilt in this case belies any contention that Splain's substantial rights were adversely affected by the prosecutor's comments. Also, this court has held that, in a case involving a statement strikingly similar to the one in the present case, there was no reversible error when, upon objection, the district court admonished the jury to disregard the prosecutor's statement. *United States v. Haley*, 452 F.2d 398, 404 (8th Cir. 1971), *cert. denied*, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972). If Splain's counsel had objected at trial, we are convinced that the District Court would have taken proper curative action and removed any semblance of error. The failure to object in the present case prevented such corrective action. Nevertheless, the weight of evidence against Splain supports the conclusion that the prosecutor's comment, while error, did not affect the substantial rights of Splain or effect a miscarriage of justice. Therefore, there was no plain error. *United States v. Grooms*, 454 F.2d 1308, 1312–13 (7th Cir.), *cert. denied*, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972); *see Kotteakos v. United States*, 328

U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[4]

 We, therefore, conclude that the comments of the prosecutor did not prejudice Splain and mandate reversal of his conviction. However, we stress that we do not and will not condone such prosecutorial misconduct. If the evidence in this case had been marginal, the conviction would have been reversed. There is simply no justification for prosecutors to sacrifice fairness for zealousness and this court will act diligently to assure that such prosecutorial misconduct does not interfere with the fairness of the trial. To date, it does not appear that improper arguments by prosecutors have been pervasive. If, however, future cases indicate that prosecutors are persistently and flagrantly disregarding their public and professional responsibilities at trial by making improper arguments to the jury, this court might then consider the advisability of adopting a *per se* rule requiring reversal of convictions secured under such circumstances.

In the present case, we find no reversible error and, accordingly, affirm the conviction.

Affirmed.

---

**3.** In *Chrisco*, the Government's attorney informed the jury that "we don't prosecute people for crimes they don't commit." The remark was held to be error but nonprejudicial in light of the substantial evidence of guilt.

**4.** In *United States v. Lamerson*, 457 F.2d 371 (5th Cir. 1972), a conviction was reversed for prosecutorial comments similar to those in the instant case. However, the court in *Lamerson* stated that the "Government's proof was not so

clear as to render the error harmless." 457 F.2d at 372. As indicated, the evidence of guilt in this case is overwhelming. A case cited by Splain, *Hall v. United States, supra*, 419 F.2d 582, is also distinguishable since there were numerous prejudicial comments made by the prosecutor in that case. Clearly, the cumulative effect of the comments there warranted reversal of the conviction. Such an egregious situation is not present in this case.