STATE of Missouri, Plaintiff-Respondent,

v.

Calvin Lamont WALKER, Defendant-Appellant.

No. 42693.

Missouri Court of Appeals, Eastern District, Division Three.

May 19, 1981.

Allen I. Harris, Bell, Harris, Kirksey & Thomas, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Suzanne M. Boersig, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

On January 29, 1980, appellant was convicted of first degree robbery in violation of § 569.020, RSMo 1978. The jury assessed a punishment of ten years and the trial judge sentenced appellant accordingly. Appeal is from this judgment.

Appellant seeks to have his conviction set aside alleging that during the trial the prosecutor impermissibly: (1) questioned appellant about when he had first made an exculpatory statement, in violation of appellant's constitutionally protected right to remain silent when arrested; and (2) attempted to question appellant about conversations with his lawyer, evidence inadmissible because of the attorney-client privilege. The trial judge overruled appellant's objection to the question about the exculpatory statement, and also denied appellant's motion for a mistrial after the question about appellant's conversation with his lawyer. Appellant urges that both these rulings constitute reversible error. Appellant's arguments are not persuasive. The judgment is affirmed.

Appellant was arrested on January 10, 1979 at the Phillips 66 station located at Kingshighway and Manchester in the City of St. Louis. The arresting officers testified that appellant was apprehended at the scene with a knife in his hand and money stuffed in various pockets. The station attendants testified that appellant had robbed them with the knife.

Appellant testified that he often went to the Phillips 66 station because the attendant sold marijuana and there was frequently a dice game going on; that on January 10, 1979 he arrived at the station about 7:00 p. m. and gambled at dice with the attendants for about an hour, winning the money that was found in his pockets; that an argument arose because of the poor quality of a $20 bag of marijuana he had purchased at the station; and that he hid with the knife when the police came. He said he did not wish to be prosecuted for carrying a concealed weapon because he had been convicted of that offense in 1971.

During cross-examination of the appellant the prosecutor asked, "Did you tell anybody—Who was the first person you told that you had won that money in a crap game?" The defense objection to that question as a comment by the state on appellant's exercise of the right to remain silent was overruled and the request for a mistrial (made outside the hearing of the jury) was denied. The question was repeated and appellant answered, "I told my people when they come over to Central to see me." The prosecutor continued, "When was that?", to which appellant replied, "The next night."

The prosecutor then asked, "Didn't you first tell your lawyer that you weren't—" and was interrupted by the defense attorney's successful objection based on attorney-client privilege. The defense attorney's requests for a reprimand and mistrial were denied but the court cautioned the attorneys to "get out of this personality thing between the two lawyers." When the prosecutor then asked, "Didn't you first tell your lawyer?", the defense objection was again sustained and the prosecutor instead questioned appellant about his knife. Additional facts will be discussed when necessary to the consideration of appellant's points relied on.

Appellant first contends that the trial court erred in overruling his objection to the question asking who appellant first told about winning the money in a crap game. He argues that the question violated his Fifth Amendment "right not to have the State comment on his failure to exculpate himself." The error, if any, was harmless.

■ The use of an accused's silence for impeachment purposes violates the due process clause of the Fourteenth Amendment, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Even before *Doyle*, it was well established in Missouri law that the silence of an accused while under arrest could not be used as affirmative proof or to impeach defendant's testimony. *State v. Stuart*, 456 S.W.2d 19, 22[3, 4] (Mo. banc 1970); *State v. Roth*, 549 S.W.2d 652, 654–655[2, 3] (Mo.App.1977);

*State v. Halk*, 524 S.W.2d 44, 48[7] (Mo.App. 1975).

■ Were the prosecution's questions an erroneous use of the appellant's silence? The challenged question sought only the identity of the person appellant told he had won the money in a crap game. Appellant had testified on direct examination that he engaged in a crap game with the two attendants at the service station, who were prosecuting witnesses. The question does not reveal whether appellant made a statement at the time of the arrest or imply that he remained silent. It does not focus attention on appellant's behavior at the time of his arrest or imply guilt or lack of credibility.

No objection was made to the subsequent question, "When was that [that you told your people about the crap game]?" Arguably an inference could be drawn that appellant was silent at the time of his arrest from appellant's answer that he first told his people the next night.

Assuming, without deciding, that it was error to permit the questions, any error was harmless beyond a reasonable doubt when all the circumstances are considered. Missouri cases

"do not categorically hold the mention of a defendant's silence *ipso facto* requires a mistrial. The cases do uphold the general principle it is error to introduce evidence of a defendant's silence while under arrest, but there are many variables— whether it was defendant or another witness who mentioned his silence, whether defendant refused or merely failed to make a statement, the degree of emphasis placed on that evidence, its repetition, defense objections thereto and relief requested and the extent of relief granted by the trial court."

*State v. Jones*, 532 S.W.2d 772, 774[2] (Mo. App.1975). The factors considered by the *Jones* court were applied without enumeration by the Eighth Circuit when it affirmed the judgment denying habeas corpus relief to Jones after *Doyle v. Ohio*. *Jones v. Wyrick*, 542 F.2d 1013 (8th Cir. 1976), *cert.*

*denied* 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807 (1977). The Eighth Circuit emphasized the overwhelming evidence of defendant's guilt and lack of corroboration for his exculpatory story and the trial court's prompt corrective action of striking the testimony and instructing the jury to disregard it.[1]

There was overwhelming evidence of appellant's guilt. He was arrested at the scene, with money stuffed in his pockets, holding a knife. The two station attendants testified that he had robbed them. His exculpatory story, while not "transparently frivolous,"[2] was directly contradicted by the testimony of the station attendants who denied knowing appellant, gambling with him or selling him marijuana and the two police officers who testified that no dice or marijuana were found at the scene. The dice game explanation was not corroborated by the testimony of any other witness. (Only appellant, the two officers and the station attendants testified.)

Appellant was not questioned about the events at the time of his arrest, he was asked who he first told that he had won the money in a dice game and when. Only the first question was alleged to have resulted in the error complained of. The attention of the jurors was not drawn to appellant's post-arrest behavior, silent or otherwise, by these questions, and no inference of his silence was drawn by the prosecutor. Appellant has not directed the court to any other mention of the issue during the trial. Any inference of silence which the jury may have drawn from the testimony was not repeated or argued to the jury and was outweighed by the implausibility of the exculpatory story and the overwhelming evidence of appellant's guilt. The point is ruled against appellant.

■ In his second point on appeal appellant contends the trial court erred in denying the motion for mistrial made after the prosecutor on cross-examination asked appellant questions about his conversation with his lawyer. The point is not well taken.

The prosecutor first asked, "Didn't you first tell your lawyer that you weren't—?"

---

1. Other circuits have analyzed the determination whether a given reference to defendant's "silence" is harmless in greater detail:
"The factors to be weighed included: 1) The use to which the prosecutor puts the postarrest silence. 2) Who elected to pursue the line of questioning. 3) The quantum of other evidence indicative of guilt. 4) The intensity and frequency of the reference. 5) The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions." [Footnotes with citations omitted.] *Williams v. Zahradnick*, 632 F.2d 353, 361–362 (4th Cir. 1980). Accord *United States v. Dixon*, 593 F.2d 626, 628 (5th Cir. 1979), *cert. denied* 444 U.S. 861, 100 S.Ct. 126, 62 L.Ed.2d 82 (1980).
" 'The decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt.' " *United States v. Shavers*, 615 F.2d 266, 270 (5th Cir. 1980), quoting *United States v. Meneses-Davila*, 580 F.2d 888, 890 (5th Cir. 1978).

2. See *Chapman v. United States*, 547 F.2d 1240, 1248[4] (5th Cir. 1977), *cert. denied* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977) (explanation of defendant "that he had loaned his car to two hitchhikers whom he had just met, that upon hearing that they had left his car at the bank and his crowbar in the bank's rear door he went not to the police but to retrieve the crowbar, and that when discovered by a police officer holding on to a crowbar wedged into the rear door of the bank he was merely in the process of extricating the crowbar from the door" was held transparently frivolous). Appellant's explanation of events the day of his arrest is not incredible enough to be called "transparently frivolous" but became totally implausible when directly contradicted by all of the other witnesses and in the absence of supporting physical evidence (dice, marijuana), even without an inference of his failure to offer it sooner.

Under the harmless error analysis in *Chapman*, the error alleged in appellant's case does not require reversal: "When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, *i. e.*, when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming." *Chapman, supra* at 1249. Appellant's exculpatory story was totally implausible and the indicia of his guilt overwhelming.

**98**

The question was not answered. Appellant's objection to it was sustained. The prosecutor then asked, "Didn't you first tell your lawyer?" Counsel again objected before appellant answered, and the objection was sustained. No further reference was made to what appellant told his lawyer. Appellant requested a mistrial along with objecting to the first question. The request was denied.

■ The declaration of a mistrial is a drastic remedy which is within the discretion of the trial court. The power to declare should be exercised only in extraordinary circumstances and if the incident is so grievous that the prejudical effects can be removed in no other way. *State v. Smith*, 431 S.W.2d 74, 82–83[21–24] (Mo.1968); *State v. Brooks*, 567 S.W.2d 348, 353[10] (Mo.App.1978). On appellate review, the question for determination is whether the trial court abused its discretion.

There was no abuse of discretion here. Appellant's objections were sustained, the questions were not answered and no further mention was made of the attorney-client conversation. Appellant's second point also has no merit.

The judgment is affirmed.

CRIST, P. J., and REINHARD, J., concur.